UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| KIZZY BYARS, et al., | Case No. 2:19-CV-1690 JCM (DJA) |
| Plaintiff(s), | ORDER |
| v. | |
| WESTERN BEST LLC, | |
| Defendant(s). | |

Presently before the court is defendant Western Best, LLC's motion for summary judgment. (ECF No. 80). Plaintiff Danielle James responded (ECF No. 83) and defendant replied (ECF No. 84). Also before the court is plaintiff's motion to reopen discovery and modify the pretrial scheduling order (ECF No. 83), which has been fully briefed. For the reasons set forth below, the court grants defendant's motion for summary judgment and denies plaintiff's motion to reopen discovery.

**I.   Procedural Background**

This putative class action arises from a variety of alleged workplace violations. (ECF No. 58). The first amended complaint was filed by two plaintiffs and alleged failure to pay overtime wages, waiting time penalties, unpaid meal and rest breaks, hostile work environment, discrimination under state and federal law, tortious constructive discharge, and interference with contractual relations. (ECF 27). Plaintiff Kizzy Byars has since been dismissed from this case, leaving only plaintiff James. (ECF No. 79).

The court ruled on defendant's motion to dismiss plaintiff's first amended complaint, dismissing her Title VII claims, without prejudice, as she failed to allege exhaustion of administrative remedies. (ECF No. 40, at 6). The court also dismissed plaintiff's interference with

**James C. Mahan**
**U.S. District Judge**

contractual relations claim for lacking sufficient factual allegations.  (*Id.* at 8).  Plaintiff then filed her second amended complaint and alleged exhaustion of administrative remedies but did not otherwise amend her interference claim.  (*See generally* ECF No. 58). Accordingly, all of plaintiff's claims in her second amended complaint remain to be adjudicated, except for her interference claim.

A scheduling order set discovery from October 5, 2021, to March 24, 2022.  (ECF No. 54). Discovery was extended three times.  The first time extended the close of discovery from March of 2022 to May 23, 2022.  (ECF No. 60).  Right before the May cut-off date, discovery was extended for a second time to July 25, 2022.  (ECF No. 67).  A few days after the extension was granted, plaintiff's attorney moved to withdraw from the case.  (ECF No. 68).  The court granted the motion in July and simultaneously extended discovery for a third time—until September 26, 2022.  (ECF No. 75).  No further extensions were granted.  Plaintiff has not moved to certify this putative class action.

## II.    Undisputed Facts

Defendant is a brothel, operating legally in Nye County, known as the "Chicken Ranch." (ECF 80, at 1–2).  Plaintiff worked as a "courtesan," or legal prostitute, at the Chicken Ranch for approximately two years.  (*Id.*, at 2).  At the beginning of her time at the Chicken Ranch, plaintiff entered into an "Independent Contractor's Agreement" with the defendant.  (*Id.*).

The agreement stipulated that defendant would provide plaintiff with a private room and access to the Chicken Ranch's facilities and clientele, plaintiff would negotiate and set her own prices for services, and plaintiff would pay the Chicken Ranch $39.00 per day for rent and bookkeeping as well as 50% of her earned service fees.  (ECF No. 81-1, at 1–2).

Plaintiff claims she resigned from the Chicken Ranch due to intolerable harassment and discrimination.  (ECF No. 58, at 16).  She thereafter filed this putative class action, alleging various violations of state and federal employment law.

## III.    Motion to Reopen Discovery

In response to defendant's motion for summary judgment, plaintiff moves to reopen discovery.  (ECF No. 83).  A request to reopen discovery should only be granted if "the movant

diligently pursued its previous discovery opportunities and…can show how allowing additional discovery would…preclude summary judgment." *Panatronic USA v. AT&T Corp.*, 287 F.3d 840, 846 (9th Cir. 2002) (citations omitted).  If the party seeking the modification "was not diligent, the inquiry should end" and the motion should not be granted.  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609(9th Cir. 1992).  The Court has broad discretion in supervising the pretrial phase of litigation.  *Zivkovic v. Southern California Edison Co.*, 302 F.3d 1080, 1087 (9th Cir.2002).

Plaintiff argues that good cause exists to reopen discovery because plaintiff was without counsel from May 2022 to September 2022, and as such, could not conduct discovery or timely move to extend discovery.  (*Id.* at 14–15).  Plaintiff provides evidence that she attempted to retain an attorney after her former counsel's withdrawal but does not otherwise follow the requirements of Local Rule 26-3 or cite relevant authority supporting her request to reopen discovery.

LR 26-3 requires movants to provide the court with (a) a statement specifying the discovery completed; (b) a specific description of the discovery that remains to be completed; (c) reasons why discovery was not completed within the time limits set by the discovery plan, and (d) a proposed schedule for completing all remaining discovery.  By providing none of this information, plaintiff makes little effort to demonstrate how she has been diligent in discovery.

Plaintiff's former attorney did not withdraw until after the second discovery extension was granted.  By then, discovery had been open for over seven months.  Plaintiff provides the court with no explanation for why discovery was not completed within this time.

The Ninth Circuit has admonished that a "scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Johnson*, 975 F.2d at 610.  Doing so disrupts the "agreed-upon" course of litigation and rewards "the indolent and cavalier." *Id.*  Plaintiff has not demonstrated good cause to reopen discovery, and her motion must be denied.

. . .

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

### IV. Defendant's motion for summary judgment

#### A. Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits (if any), show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Information may be considered at the summary judgment stage if it would be admissible at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In evaluating evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. Rather, it draws all inferences in the light most favorable to the nonmoving party. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir.1987). The court's function at this stage is not to "determine the truth of the matter but to determine whether there is a genuine issue for trial." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008).

When the non-moving party bears the burden of proof at trial, the moving party can meet its burden on summary judgment in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the non-moving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient

that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.

However, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324. If the nonmoving party's evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).

### B. Discussion

Defendant argues that summary judgment is warranted because plaintiff provides no authenticated evidence that she was defendant's employee. (ECF No. 80, at 2). The court agrees. Attached to plaintiff's response to defendant's motion for summary judgment are four exhibits, none of which are authenticated. "A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir.2002). Unauthenticated documents cannot be considered on summary judgment because "[a]uthentication is a condition precedent to admissibility." *Id.* (citations omitted).

Authentication requires that the proponent produce evidence that is sufficient to support a finding that the document is what the proponent claims it is. FED. R. EVID. 901(a). Plaintiff must therefore produce a declaration or other appropriate affidavit providing a foundation for the admissibility of her evidence. *Coal. for a Sustainable Delta v. Fed. Emergency Mgmt. Agency*, 812 F. Supp. 2d 1089, 1097–98 (E.D. Cal. 2011). Because defendant has produced sufficient evidence to negate an element of each of plaintiff's claims, and plaintiff provides no authenticated evidence of her own, she has not met her burden and summary judgment is appropriate.

#### 1. *Plaintiff's State Law Claims*

Plaintiff's first, second, third, sixth, and seventh claims all arise under state law. Claims one, two, and three are based on Chapter 608 of the Nevada Revised Statutes. Chapter 608 covers only employees, not independent contractors. NEV. REV. STAT. § 608.255 (West 2023); *Terry v.*

**James C. Mahan**
**U.S. District Judge**

- 5 -

*Sapphire Gentlemen's Club*, 336 P.3d 951, 954 (Nev. 2014).  If a plaintiff makes solely statutory claims, as is the case here, a defendant may prevail on summary judgment by establishing that plaintiff is an independent contractor under NRS 608.0155.  *Myers v. Reno Cab Co., Inc.*, 492 P.3d 545, 554 (Nev. 2021).

NRS 608.0155 provides litigants are "*conclusively* presumed to be an independent contractor" if they: (a) have a social security number or have "filed an income tax return for…earnings from self-employment…in the previous year," (b) are "required by the contract with the principal to hold any necessary state…or local business license and to maintain any necessary occupational license, insurance or bonding in order to operate in this State," and (c) satisfy three or more other relevant criteria.  NEV. REV. STAT. § 608.0155 (West 2023) (emphasis added).

The criteria relevant to this discussion are that "the person has control and discretion over the means and manner of the performance of any work and the result of the work, rather than the means or manner by which the work is performed;" "the person has control over the time the work is performed," other than for an agreement regarding range of work hours; and the person is "not required to work exclusively for one principal." NEV. REV. STAT. § 608.0155(1)(c) (West 2023).

A "contractual recitation that a worker is not an employee is not conclusive" under Section 608.0155.  *Myers*, 492 P.3d at 548.  "Instead, the court must determine employee status under the applicable test, based on *all* relevant facts." *Id.* at 550 (emphasis added).  When the relevant facts are not in dispute, the question of employment status is one of law and may be resolved by the court on summary judgment.  *Doe Dancer I v. La Fuente, Inc.*, 481 P.3d 860, 868 (Nev. 2021).

Defendant produces an authenticated agreement, signed by plaintiff, titled "Independent Contractors Agreement."  (ECF No. 81-1).  The agreement stipulates that plaintiff is to file her own taxes, maintain her own licenses, and furnish her own professional props.  (*Id.*).  Defendant agrees not to "control or direct the details, manner or means by which" plaintiff performs her services.  (*Id.*).  Defendant also agrees to maintain its own licenses and provide plaintiff with a private room and access to Chicken Ranch Facilities and clientele in exchange for rent and 50% of her service fees.  (*Id.*).

Plaintiff is free to set her own work hours provided that she notifies defendant of her intended hours, and she may also "contract for similar services with other individuals and other businesses." (*Id.*). Plaintiff receives payment from clients and does not receive a salary from defendant. (*Id.*).

In addition to the agreement, plaintiff's deposition testimony supports a finding that she was an independent contractor. Plaintiff explains that, while working at the Chicken Ranch, she paid for and maintained her own licenses. (ECF 81-9, at 6–7). Plaintiff selected her own work hours and performed services at the Chicken Ranch based on the parties' *mutual* availability. (*Id.* at 10). Although defendant required the plaintiff to provide a time estimate of her services to patrons, plaintiff exclusively controlled how *much* time was involved in the service, what services to provide, how to provide them, to whom to provide them, and how much she charged for them. (*Id.* at 22–24). Plaintiff also worked at other legal brothels at the same time that she worked at the Chicken Ranch. (*Id.* at 11).

There is no reasonable dispute that plaintiff was an independent contractor—rather than an employee—under NRS 608.0155. The Nevada Supreme Court case *Doe Dancer* provides guidance.[1] This case involved performers at a strip club under analogous circumstances, and the court found that the performers qualified as employees. 481 P.3d at 863–64. But unlike the plaintiffs in *Doe Dancer*, plaintiff has not provided the court with authenticated evidence that defendant established "a framework of false autonomy" by giving her a "coercive choice between accruing debt to the [house] or redrawing personal boundaries of consent and bodily integrity." 481 P.3d at 869.

The defendant in *Doe Dancer* also exerted control in other ways by dictating the number of costume changes the plaintiffs were required to undergo, the "specific number of G-strings" they were required to wear, and the prices plaintiffs charged for dances. *Id.* None of the foregoing is present in the record of the instant case.

---

[1] Although *Doe Dancer* was analyzed under the economic realities test, rather than NRS 608.0155, its analysis is nonetheless relevant as both tests contemplate the plaintiff's control over the "means and manner" in which work is performed. *See* 481 P.3d at 865.

**James C. Mahan**
**U.S. District Judge**

- 7 -

Based solely on defendant's evidence, all requirements of NRS 608.0155 are satisfied. With no dispute of material fact, the court grants summary judgment in favor of defendant on plaintiff's first, second, and third claims.

Plaintiff's sixth and final state law claim is for discrimination and retaliation under NRS 613.330. The Nevada Supreme Court has explained that Nevada's anti-discrimination statutes are almost "identical" to Title VII, and courts may look to federal law for guidance. *E.g.*, *Pope v. Motel 6*, 114 P.3d 277, 280 (Nev. 2005), *Complete Care Med. Ctr. v. Beckstead*, 466 P.3d 538, 2020 WL 3603881, at *1 (Nev. 2020).

Due to their similarity, "courts apply the same analysis" under both. *Complete Care Med. Ctr.*, 2020 WL 3603881, at *1. As plaintiff also alleges Title VII claims, the court addresses plaintiff's sixth claim further below, alongside the court's analysis of plaintiff's federal claims.

Plaintiff's seventh claim is for tortious constructive discharge. This tort-based cause of action allows a plaintiff to sue her at-will employer when her discharge "violates public policy." *Russo v. Shac, LLC*, 498 P.3d 1289 (Nev. Ct. App. 2021). A prerequisite for this claim is that the plaintiff demonstrate that "she lacks an adequate statutory remedy" for her discharge, as it would be unfair to allow her an additional tort remedy under such circumstances. *Id.*; *Ozawa v. Vision Airlines, Inc.*, 216 P.3d 788, 791 (Nev. 2009).

Plaintiff brings claims under NRS 613.330 and Title VII based on the same underlying facts as her constructive discharge claim. Plaintiff therefore has alternative statutory remedies that even she is aware of. Plaintiff cannot attempt to take two bites at the apple. Summary judgment is granted in favor of defendant on plaintiff's seventh claim.

### 2. Plaintiff's Federal Claims

Plaintiff alleges two Title VII claims: (1) hostile work environment, and (2) discrimination and retaliation. (ECF No. 58). A prerequisite to both of these claims is an employer-employee relationship. *Adcock v. Chrysler Corp.*, 166 F.3d 1290, 1292 (9th Cir. 1999) ("Title VII protects employees, but does not protect independent contractors."). In determining whether a person is an employee under Title VII, the court evaluates "the hiring party's right to control the manner and

means by which the product is accomplished." *Murray v. Principal Fin. Grp., Inc.*, 613 F.3d 943, 945 (9th Cir. 2010). The relevant factors under this evaluation are:

> "(1) the skill required; (2) the source of the instrumentalities and tools; (3) the location of the work; (4) the duration of the relationship between the parties; (5) whether the hiring party has the right to assign additional projects to the hired party; (6) the extent of the hired party's discretion over when and how long to work; (7) the method of payment; (8) the hired party's role in hiring and paying assistants; (9) whether the work is part of the regular business of the hiring party; (10) whether the hiring party is in business; (11) the provision of employee benefits; and (12) the tax treatment of the hired party."

*Id.*

In *Murray*, the Ninth Circuit classified the plaintiff as an independent contractor, primarily because she was free to conduct her business as she saw fit "without day-to-day intrusions." *Id.* at 946. The Ninth Circuit cited as supporting evidence the fact that plaintiff scheduled her own time off, was paid only commissions, reported herself as self-employed to the IRS, and sold products other than those offered by the defendant "in limited circumstances." *Id.* Even though the plaintiff had a "long-term" relationship with the defendant and was subject to "some minimum standards," these were "insufficient to overcome the strong indications" that she was an independent contractor. *Id.*

The undisputed facts of the present case are similar. Although plaintiff was subject to some minimum standards set by defendant (such as providing time estimates), she was otherwise free to perform her services without intrusion. She was paid by patrons based on the prices she dictated, for the services she negotiated. She was free to set her own hours at the Chicken Ranch. She was free to—and did—work at other brothels. The parties' agreement also stipulated that she would file her own taxes as self-employed.

Based upon the record before the court and *Murray*, the court finds that plaintiff was an independent contract for purposes of Title VII and NRS 613.330. Summary judgment is granted in favor of defendant on plaintiff's fourth, fifth, and sixth claims.

Finally, plaintiff argues that she is an employee under the "economic realities" test, which is the test federal courts employ when determining whether a person is an employee under the Fair

1  Labor Standards Act ("FLSA"). *Dawson v. Nat'l Collegiate Athletic Ass'n*, 932 F.3d 905, 909 (9th Cir. 2019).

Plaintiff makes an alternative claim for overtime wages under the FLSA in her second amended complaint. (ECF No. 58, at ¶ 89). Under the economic realities test, a person is classified as an employee for FLSA purposes if they are, "as a matter of economic reality…dependent upon the business to which they render service." *Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 754 (9th Cir. 1979).

Under this test, to distinguish between independent contractors and employees, courts may consider a number of factors, including: the degree of defendant's right to control the manner in which the work is to be performed; plaintiff's "opportunity to profit or loss" depending on her "managerial skill;" plaintiff's "investiture in equipment or materials required" for her work; "whether the service rendered requires a special skill;" "degree of permanence in the working relationship;" and "whether the service rendered is an integral part of the alleged employer's business." *Id.* "The presence of any individual factor is not dispositive of whether an employee/employer relationship exists," rather, the court must consider the "circumstances of the whole activity." *Id.*

There is no genuine dispute of fact that plaintiff was an employee under the FLSA. The reasons supporting the court's finding that plaintiff was an independent contractor under her other claims also apply here, and the court need not reiterate them. But the court will highlight an important factor present in this analysis, not present in the others.

Defendant has provided evidence that plaintiff's opportunity for profit depended on her own managerial skills. Plaintiff could—and did—work for other brothels. Plaintiff negotiated her own prices. Plaintiff could also promote herself online, thereby attracting more patrons, so long as she did not advertise her services outside of Nevada. (ECF No. 81-9 at 36). Plaintiff could therefore book more clients, work more hours, and earn more profit, based upon her ability to manage not only her time, but also herself. The court grants summary judgment in favor of defendant on this final claim.

. . .

**James C. Mahan**
**U.S. District Judge**

### V.   Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiff's motion to reopen discovery (ECF No. 83) is DENIED.

IT IS FURTHER ORDERED that defendant's motion for summary judgment (ECF No. 80) is GRANTED.

The clerk is instructed to enter judgment in favor of defendant on ALL claims and CLOSE the case.

DATED October 16, 2023.

                                             _____
                                             UNITED STATES DISTRICT JUDGE